IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:05-00101 |
| ) | JUDGE HAYNES |
| MARCO TULIO FRANCO-BONILLA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

In this action, the United States filed an indictment charging the Defendant, Marco Tulio Franco-Bonilla (Franco), with violating 8 U.S.C. § 1326 by reentering the United States after his prior deportation.

Before the Court is the Defendant's motion to dismiss the indictment with prejudice (Docket Entry No. 14), contending that the Government violated 18 U.S.C. § 3161(b) of the Speedy Trial Act ("STA") by detaining the Defendant for more than thirty (30) days without indicting him as required by Section 3161(b). The Defendant asserts that since April 1, 2005, the Government has had a final order of deportation for the Defendant but has not deported him. The Defendant asserts that the Government detained him for the purpose of filing criminal charges for illegal-reentry for which he was indicted on May 25, 2005.

The Government responds that any detention of the Defendant was civil confinement that is not counted for Section 3161(b) purposes and that the Defendant cannot show that his detention was a ruse to pursue criminal charges. The Government asserts that the indictment was returned thirty (30) days after issuance of the arrest warrant for the Defendant.

**A. Review of the Record**

In November 1999, Franco received a six-month sentence for transporting illegal aliens from Dallas, Texas, to Illinois, in violation of 8 U.S.C.§ 1324(a)(1)(A)(ii). (Docket Entry No. 14, Exhibit A thereto). Under the law, this offense is an "aggravated felony," 8 U.S.C. § 1101(a)(43)(N), and Franco was subject to summary deportation under the Immigration and Nationality Act (INA) 8 U.S.C. § 1228(b)(1).

Franco was released from detention in December 1999, and the Immigration and Naturalization Service ("INS") processed Franco for summary deportation. The final order of deportation was entered on December 27, 1999. Id. at Exhibits B, C, D and E. Within three days, Honduras authorized Franco's return to his native country. Id. at Exhibit V. On January 14, 2000, Franco was to be transported to Honduras, but due to the devastation of Hurricane Mitch, id. at Exhibit F, the United States granted "temporary protected status" to Hondurans who were within the United States. See 64 Fed. Reg. 424 (Jan. 5, 1999); cf 68 Fed. Reg. 23744, 23745 (May 5, 2003) (extending temporary protected status to the present); 8 U.S.C. § 1254a(b)(l)(B) (description of temporary protected status). Franco remained in this country.

In February 2005, Franco was charged in Rutherford County Court with the theft of lumber valued at less than $500. (Docket Entry No. 14, Exhibit G thereto). On February 19, 2005, an officer from the Rutherford County Sheriff's Department arrested Franco and during the booking process, determined from NCIC records that Franco had a prior outstanding deportation order of January 14, 2000. Id. at Exhibits H and I.

The Rutherford County officer reported Franco's arrest to the United States Immigration and Customs Enforcement ("ICE"). This notification of Franco's arrest was faxed to James Balsamo, an ICE Special Agent and the case agent for this action. Id. at Exhibit I. ICE

immediately faxed a detainer for Franco to Rutherford County Sheriff's Department and described Franco as an "NCIC DEPORTED AG-FELON." Id. at Exhibit J. An ICE document categorized Franco's case as a "criminal alien investigation." Id. at Exhibit K, p. 2.

Franco remained in the custody of Rutherford County until he pled guilty to the theft charge on March 28, 2005, for which he received a sentence of 38-days that was, in effect, a time served sentence. Id. at Exhibits L and M. Despite his sentence, Franco remained in a Rutherford County jail due to the ICE detainer.

On April 1, 2005, Franco was notified that the Attorney General intended to reinstate his previous order of removal, that he had a right to contest that determination by making a written or oral statement to an immigration office, but he did not have a right to a hearing before an immigration judge. Id. at Exhibit R. At some point, Franco was transported from the Williamson County jail for detention or later to a holding facility in Memphis, Tennessee. From Memphis, the defendant was moved to Tensas Detention Center in Waterproof, Louisiana, for deportation.

On April 1, 2005, ICE faxed Franco's fingerprints to the FBI, which confirmed that Franco was the same Franco previously deported in January 2000. Id. at Exhibit Q. The same day, ICE took custody of Franco from the Rutherford County authorities. Id. at Exhibit O. ICE Special Agent Balsamo took a sworn statement from Franco, id. at Exhibit P at 2, in which Franco admitted to his prior deportation order. On April 1, 2005, the designated executive officer reinstated Franco's final order of deportation, Agent Balsamo informed Franco he would be deported and the warrant for the execution of his deportation issued. Id. at Exhibits R and S.

On April 4, 2005, Agent Balsamo prepared a "Report of Investigation on Franco." Id. at Exhibit T. Agent Balsamo's investigative report includes a statement that "it appears that a

3

violation of 8 U.S.C § 1326, Re-entry of a Removed Alien has occurred." Id. at 4. The report ends with the phrase: "INVESTIGATION CONTINUES." Id. Franco remained in ICE custody.

ICE Agent Balsamo subsequently notified the United States Attorney's Office about Franco. On May 25, 2005, Franco was indicted in this district for one count of violating 8 U.S.C. § 1326, illegal reentry after deportation. ICE sought travel authorization from Honduras on June 10, 2005.

### B. Conclusions of Law

Under the INA, once deported, an alien is subject to summary deportation through the reinstatement of the prior deportation order, regardless of any criminal conviction. 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8. The alien does not appear before an immigration judge and cannot appeal to the Board of Immigration Appeals. 8 C.F.R. § 241.8; *Matter of* G-N-C, 22 I. & N. Dec. 281, 287, Inter. Dec. 3366, 1998 WL 646918 (BIA 1998). Upon the designated executive officer's signature, the deportation order is final, and a warrant for the alien's physical deportation issues. The only remaining process for physical expulsion are: (1) obtaining of travel authorization from the home country, and (2) arranging transportation.

The Speedy Trial Act requires the Government to indict a defendant within 30 days of a defendant's arrest "in connection with" the charge.

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b).

In <u>United States v. Garcia-Echaverria</u>, 374 F.3d 440, 450-53 (6th Cir. 2004), the Sixth Circuit considered Section 3161(b) where an alien who was awaiting deportation was detained

4

pending criminal charges. There, the alien-defendant was detained on September 4, 2001, and was indicted 29 days later for illegal re-entry. Id. at 451-52. The Defendant argued that he was not indicted or initially brought before a magistrate until more than thirty days after his civil immigration detention ripened into an "arrest" and was subject to § 3161(b)'s thirty days requirement for an indictment.

The Sixth Circuit observed that several circuits have held that "§ 3161(b) does not generally apply to aliens held in civil detention," but also noted that many circuits have allowed an exception to this general rule "when there is evidence of collusion between immigration and criminal prosecution authorities demonstrating that the alien's civil detention is a mere ruse to avoid application of the Speedy Trial Act. . . . 'such that the primary or exclusive purpose of civil detention is to hold the individual for future prosecution.'" Id. at 451. The defendant argued that this exception applied to him because on September 4, 2001, he was fingerprinted and informed he was being held for prosecution. Assuming without deciding that these facts demonstrated collusion, the Sixth Circuit ruled that § 3161(b) was not violated because the Defendant was indicted on October 3, 2001, within thirty days of September 4, 2001. Id. at 452.

In an unpublished opinion, the Sixth Circuit stated that, "it is true that where a state arrest and detention are used as a device to restrain a defendant until the federal authorities choose to prosecute, the time the defendant spends in state custody can be included in the calculation of time under the Federal Speedy Trial Act." United States v. Gaines, 105 Fed. Appx. 682, 687-88 (6th Cir. 2004), *vacated and remanded on other grounds,* Gaines v. Unites States, 125 S.Ct. 1090 (2005) (remand on Booker grounds).

The burden is on the defendant to establish that the "primary or exclusive purpose" of his

5

detention was for future criminal prosecution. United States v. Drummond, 240 F.3d 1333, 1336 (11th Cir. 2001).

Here, there is no evidence of collusion between Rutherford County, ICE or other government officials. Thus, the issue pertains to the primary purpose of Franco's detention. On February 19, 2005, Franco's file was labeled a "criminal alien investigation." (Docket Entry No. 14 at Exhibit K). On April 1, 2005, the ICE agents sought fingerprint evidence. By April 1, the federal government could have deported Franco but did not initiate the travel authorization for his actual deportation until June 10, 2005. On April 4, 2005, ICE agent Balsamo cited a violation of § 1326 and referred to Franco's conduct as under "investigation." Fifty-one days elapsed from April 4th until his indictment on May 25, 2005. There is not any proof to explain or justify the delay. The Court concludes that absent such proof, the preponderance of the evidence is that the primary purpose of Franco's detention was the filing of the criminal charge in this action.

As to whether dismissal is with or without prejudice, the Speedy Trial Act identifies three factors to be considered: (1) the seriousness of the offense; (2) the facts and circumstances that led to the dismissal; and (3) the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice. 18 U.S.C. § 3162(a).

Franco's offense of illegal reentry is not asserted to be "serious," but based upon his prior conviction, the law considers Franco to be an "aggravated felon." The delay here was caused by ICE without an explanation, and absent such explanation, the primary purpose of Franco's detention was to pursue the charge in the indictment. As to the "impact of reprosecution on the administration of the [Speedy Trial] Act and the administration of justice," dismissal with

6

prejudice is favored. United States v. Vasquez-Escobar, 30 F.Supp.2d 1364, 1368 (M.D. Fla. 1998). "'[D]ismissal without prejudice can be viewed as frustrating the Act's mandate of swift prosecution.'" Id. at 1369. (citation omitted). Franco argues that in any circumstances he will be deported and will be barred from reentry into the United States, which is in itself a harsh punishment. See Ng Fung Ho v. White, 259 U.S. 276, 284 (1922). Yet, given Franco's status as an "aggravated felon," the Court concludes that the dismissal should be without prejudice

For these reasons, the defendant's motion should be granted, but dismissal will be without prejudice.

An appropriate Order is filed herewith.

**ENTERED** this the 16th day of November, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge